# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

| | | |
|---|---|---|
| JOSHUA GLASSCOCK, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | No. 25-8006 |
| | ) | |
| SIG SAUER, INC., | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

## Motion to Intervene for the Limited Purpose of Opposing Defendant-Petitioner's Motion to File Sealed Appendix and Plaintiff-Respondent's Motion for Leave to File Under Seal

Trace Media, Inc., which owns and operates the news website *The Trace*, moves this Court to intervene in this action for the limited purpose of opposing Defendant-Petitioner Sig Sauer, Inc.'s Motion to File Sealed Appendix and Plaintiff-Respondent's Motion for Leave to File Under Seal. In support of its motion, movant states as follows:

### *The Trace*

1. Trace Media, Inc. is a non-profit journalism organization which owns and operates *The Trace*, an online news website which reports on gun violence.

2. *The Trace* was established more than ten years ago and operates the only newsroom in the country dedicated to reporting on gun violence.

3.     *The Trace* regularly partners with other national publications, such as *The Atlantic*, *Newsweek*, and *Time*, which do not have journalists dedicated to gun violence.

4.     *The Trace* has frequently reported on the allegations that the Sig Sauer P320 is prone to accidental discharges.

5.     For example, in 2023, *The Trace* and the *Washington Post* jointly published the results of an investigation into those claims in a report titled "One of America's favorite handguns is allegedly firing on its owners."[1]

6.     In May, *The Trace* reported that police departments across the country are dropping the P320 due to concerns about the gun's safety, but are often reselling their P320s to unsuspecting buyers, creating an ethical minefield.[2]

7.     *The Trace* has specifically covered litigation concerning the alleged safety defect in the P320, including a $2.35 million jury verdict last year in Georgia in a case in which the jury found the P320 was defectively designed.[3]

---

[1] https://www.thetrace.org/2023/04/sig-sauer-p320-upgrade-safety/

[2] https://www.thetrace.org/2025/05/sig-sauer-p320-police-resale-public/

[3] https://www.thetrace.org/2024/06/sig-sauer-p320-lawsuit-safety-issues/

80835709.v1

8.   The Washington State Criminal Justice Training Commission cited this report from *The Trace* in an "immediate action" bulletin it sent to all law enforcement agencies in Washington concerning "a serious safety concern with the Sig Sauer P320." (*See* ECF No. 121-21).

## The underlying lawsuit

9.   In 2022, Plaintiff-Respondent Joshua Glasscock filed a proposed class action lawsuit against Sig Sauer, alleging that the P320 lacks safety features of comparable handguns sold by Sig Sauer's competitors and, as a result, "inadvertently discharges at a higher rate than comparable pistols," creating "dangerous consequences for its users." (ECF No. 1 ¶¶ 3, 35).

10.   Glasscock also alleged that "[a]t the time that Sig Sauer designed, manufactured, and marketed the P320 firearms it knew or should have known that the defective pistols pose serious safety risks to consumers" and that despite Sig Sauer's knowledge of the inherent risks posed by the P320, Sig Sauer did not warn purchasers (or users) of the weapon's defects (ECF No. 1 ¶¶ 83-90).

11.   On July 28, 2025, the District Court granted Glasscock's motion for class certification. (ECF No. 184).

12.   The District Court cited the "Failure Modes, Effects, and Criticality Analysis," or FMECA—which Sig Sauer performed for the U.S. Army

80835709.v1

on the M18 (the military equivalent of the P320)—nine times in its order granting class certification. (*See* ECF No. 184, at pp. 12, 20, 21. 22).

### *The Trace* **moves to intervene in the District Court**

13.     On July 17, 2025, *The Trace* moved to intervene in the underlying lawsuit for the limited purpose of moving to unseal the exhibits to the parties' class certification briefing and to require the parties to file unredacted copies of their class certification suggestions. (ECF No. 181).

14.     Following the filing of *The Trace*'s motion in the District Court, Sig Sauer agreed to unseal all exhibits used in the class certification briefing except the FMECA.

15.     Sig Sauer also agreed to remove all redactions from the class certification briefing, except for references to the FMECA.[4]

16.     On August 8, 2025, Sig Sauer filed its newly unsealed exhibits and unredacted briefing. (ECF No. 188).

17.     Sig Sauer has twice obtained extensions of time to respond to The Trace's motion to unseal the FMECA; its response is currently due August 21, 2025. (ECF No. 187).

---

[4] With *The Trace*'s consent, Sig Sauer has redacted the names of individuals who reported that their P320 "inadvertently discharged."

80835709.v1

**The unredacted FMECA is posted to the Internet**

18.     On January 29, 2025, a gun enthusiast posted on the Internet that he had located an improperly redacted copy of the Sig Sauer P320 FMECA on CourtListener.com and was able to remove the redactions.[5]

19.     He then posted the complete, unredacted copy of the FMECA to his website, Practical Shooting Insights ("PSI").



20.     The unredacted FMECA remains available on the Practical Shooting Insights website.

---

[5] https://practicalshootinginsights.com/the-document-sig-sauer-doesnt-want-you-to-see-about-the-p320/

80835709.v1

Appellate Case: 25-8006     Page: 5     Date Filed: 08/14/2025 Entry ID: 5548003

21. Soon, others on the Internet picked up on the posting of the FMECA and began to repost it.

22. For example, a YouTube content creator named "Liberty Doll" posted a video on the FMECA titled "Sig's Troubles Get Worse | Bans, Secret Documents."[6]



23. As can be seen, the video has been viewed more than 100,000 times.

[6] https://www.youtube.com/watch?v=aaR2sZcF9JM

80835709.v1

24.     On August 6, 2025, Sig Sauer's Vice President of Consumer Affairs, Phil Strader, gave a three-hour interview devoted to the P320 on the podcast "Behind the Lens."[7]



Episode 238 Live with Sig Sauer's Vice President - Consumer Affairs about the P320 and the Shooting Sports

25.     During the interview, Strader was asked the following question: "Phil, why does Sig or the U.S. Army not want the P320 MHS program FMECA document that PSI unredacted made public? Is there something to hide?" (1:53:50)

26.     Strader responded, "No, there's not." (1:54:03).

---

[7]        https://rumble.com/v6x6mv6-live-with-sig-sauers-vice-president-consumer-affairs-about-the-p320-and-the.html?e9s=src_v1_mfp

27. Strader then gave a detailed description of the FMECA, including telling viewers to go to the Practical Shooting Insights website to view the FMECA, as shown in these excerpts from Strader's comments:

- "What the FMECA document does … Practical Shooting Insights, I think, they still have it up on their website;"

- "the left side talks about the risks of a handgun. … there's a column that says "O" and those risks are rated, I think, as a "C;""

- "then there's an index or a risk matrix of high because if it kills, if the potential is for a firearm that could go off, of course, the potential is to kill;"

- "Then the risk factor is set at high;"

- "So, on the right side of that document were mitigation factors, what the company did to mitigate those risks …"

(1:54:.3 – 1:58.37)

28. Strader also said, "now [that] it's out there we don't mind; we'll discuss exactly, I could go line by line to if you wanted me to." (l:58:37)

## I. *The Trace*'s right to intervene

Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure provides that "the court may permit anyone to intervene who … has a claim or defense that

8

Appellate Case: 25-8006     Page: 8     Date Filed: 08/14/2025 Entry ID: 5548003

shares with the main action a common question of law or fact." This Court has explained that "[w]here a party is seeking to intervene in a case for the limited purpose of unsealing judicial records, … it is the public's interest in the confidentiality of the judicial records that—'in the language of Rule 24(b)(2)—[is] a question of law ... in common between the Parties [to the original suit] and the [would-be intervener].'" *Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015) (per curiam). "Accordingly, permissive intervention under Rule 24(b) is an appropriate procedural vehicle for non-parties seeking access to judicial records in civil cases." *Id*.

Intervention in the Courts of Appeal is governed by the "'policies underlying intervention' in the district courts." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277, (2022) (quoting *Automobile Workers v. Scofield*, 382 U.S. 205, 217, n. 10 (1965)).

Accordingly, intervention for the limited purpose of opposing the parties' motions to seal is proper.

## II.    The public's right of access to judicial records

"There is a common-law right of access to judicial records." *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (citing *Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 597 (1978)). "This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the

80835709.v1

reasonableness and fairness of judicial proceedings, and 'to keep a watchful eye on the workings of public agencies.'" *Id*. (quoting *Nixon*). "It also provides a measure of accountability to the public at large, which pays for the courts." *Id*. "[T]he common-law right of access applies to judicial records in civil proceedings." *Id*.

While the right of access is not absolute, it creates a "presumption of public access to judicial records." *United States v. Gray*, 59 F.4th 329, 333 (8th Cir. 2023). "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring the federal courts." *IDT Corp.*, 709 F.3d at 1224.

As this Court has explained, "judicial records and documents generally will 'fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.'" *Id*. at 1223 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir.1995)). When matters directly affect an adjudication, the presumption of access can only "be overcome if the party seeking to keep the records under seal provides compelling reasons for doing so." *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018).

10

Class certification directly relates to the adjudication of a matter. This much is plain from the text of Rule 23(a), which explicitly requires the Court to examine "questions of law or fact" and "the claims or defense of the representative parties." Fed. R. Civ. P. 23(a)(2)-(3). This Court has said the same. "'The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 783 (8th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

Here, the District Court cited the FMECA nine times in its order granting class certification. (*See* ECF No. 184, at pp. 12, 20, 21. 22). These were not mere passing references. For example, the District Court engaged in an extended discussion of whether the FMECA demonstrated Sig Sauer had actual notice of the alleged defect in the P320.

> Plaintiff relies on the FMECA to show Defendant had actual knowledge of the 3-Part Defect. The FMECA identified safety measures that would decrease the P320's likelihood of unintentional discharge, which included employing a manual thumb safety and training according to an Army field manual tilted "*Pistol Marksmanship*. (See Docs 128-13 and 128-4, page 18).

11

Appellate Case: 25-8006     Page: 11     Date Filed: 08/14/2025 Entry ID: 5548003

Defendant argues that the FMECA column Plaintiff refers to re-

gards pistols generally, and not specifically the P320. (Doc. 158-

8, page 5). Even with that understanding, Defendant was placed

on notice of the inherent risks in pistols generally and created

enhancements to satisfy the Government's requirements for the

M17 and M18 pistols to mitigate or eliminate the risks found in

pistols generally.

(ECF No. 184, at pp. 21-22).

Because the FMECA was central to the District Court's ruling, Sig

Sauer must show "compelling reasons" to seal the FMECA. *See IDT Corp. v.*

*eBay*, 709 F.3d at 1224; *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898

F.2d 1371, 1376 (8th Cir. 1990)

## III.    Sig Sauer has not shown compelling reasons to seal the FMECA

In its motion, Sig Sauer argues this Court should allow it to file the

"highly confidential" FMECA under seal because it is subject to "Distribution

Statement D" and the Army has asked Sig Sauer not to release the FMECA to

the public. (Mot. at 2). There are a host of defects in Sig Sauer's argument.

First—and most obvious—the FMECA is not "highly confidential;" it

is available on the Internet and has been viewed more than 100,000 times.

Five days before Sig Sauer filed its motion, its Vice-President for Consumer

12

Affairs discussed the FMECA extensively online and even told viewers they could find the FMECA on the Practical Shooting Insights website.

As the Second Circuit has explained in affirming the denial of a motion to seal information that had been previously published: "The genie is out of the bottle … [w]e have not the means to put the genie back in." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004). "This is generally so when information that is supposed to be confidential—whether it be settlement terms of a discrimination lawsuit or the secret to making the hydrogen bomb—is publicly disclosed. Once it is public, it necessarily remains public." *Id*. n.11 (citation omitted).

This is precisely the case here: even if Sig Sauer had taken the position previously that the FMECA was "highly confidential," it cannot undo the fact that the document has now been publicly disclosed. Sig Sauer's demand to seal this now-public document should be denied.

Second, even if the genie was not out of the bottle,[8] Sig Sauer's claim that the FMECA has been designated "Distribution Statement D" under the Department of Defense's Instruction 5230.24 is not supported by the record.

---

[8] The parties' class certification briefing includes two FMECA exhibits: ECF Nos. 121-13 and 121-14. Because *The Trace* has not seen the two exhibits, it cannot state whether both exhibits are included in the FMECA on the Practical Shooting Insights website.

80835709.v1

The very first page of DoD Instruction 5230.24 states that among its purposes is to "[e]stablish[] a standard framework and **_markings_**" for technical documents. (Finkelman Decl. p. 6). The Instruction further provides that "[t]echnical information supporting acquisition … that is subject to the restrictions of this issuance will be **_marked_**." (Finkelman Decl. § 3.1(d), at p. 14). It further provides that "[r]emoval of or tampering with control markings by unauthorized personnel is strictly prohibited." (Finkelman Decl. § 3.1(k), at p. 14).

Instruction 5230.24 even provides an example of a proper marking:

**Controlled By**: OUSD(R&E)
**Controlled By**: Defense Advanced Research Projects Agency
**CUI Category**: CTI, Proprietary Business Information
**Distribution Statement**: E
**POC**: dod.component.mailbox@mail.mil

(Finkelman Decl. § 3.4(g), at p. 19).

The FMECA on the Practical Shooting Insights website—which Sig Sauer's Vice-President directed people to—does not have any DOD markings, no less a "Distribution Statement D" marking.

As such, the only basis to believe the FMECA is subject to Distribution Statement D is the Declaration of Eric Finkelman, who states he is "Assistant General Counsel for Litigation at Sig Sauer." (Finkelman Decl. ¶ 5).

80835709.v1

According to Finkelman's LinkedIn profile, he has worked for Sig Sauer less than two years and was between positions at Avon cosmetics and Benjamin Moore paint company when the Sig Sauer-Army P320 FMECA was created in February 2027.[9]

Finkelman's declaration includes no information showing how he would have personal knowledge of the FMECA's designation as subject to Distribution Statement D. *See Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 982 (8th Cir. 2004) ("We consider only admissible evidence and disregard portions of various affidavits … made without personal knowledge [or] consisted of hearsay"); *Thomas & Wong Gen. Contractor v. Lake Bank, N.A.*, No. CV 06-515 (ADM/RLE), 2007 WL 9735887, at *5 (D. Minn. May 11, 2007) (refusing to consider affidavit of litigation counsel not made on personal knowledge).[10]

Third, even if the FEMCA has, in fact, been designated Distribution Statement D, Instruction 523.024 explicitly states that the designation of a document under the Instruction does not provide a basis for withholding the

---

[9] https://www.linkedin.com/in/ericrfinkelman/

[10] In its motion to seal its appendix, Sig Sauer cites to the *Childs* and *Harris* cases where the court found significant the fact the documents were marked confidential by the government. (*See* Mot. at 9-10). The lack of any government marking of the FMECA is equally significant.

15

document from the public where the document relates to performance and reliability of military equipment. Specifically, the Instruction states it "[d]oes not provide authority to withhold from public release unclassified information regarding … evaluations of performance and reliability of military and space equipment." (Finkelman Decl. § 1.1(d), at p. 10).

By definition, the FMECA—which is titled "MSH *Pistol Failure Modes, Effects, Critical Analysis*"—relates to the "performance and reliability of military … equipment." In fact, Merriam-Webster Dictionary defines "failure" as an "omission of occurrence or *performance*" ([https://www.merriam-webster.com/dictionary/failure](https://www.merriam-webster.com/dictionary/failure)) and Black's Law Dictionary similarly defines "failure" as "[a]n omission of an expected action, occurrence, or *performance*." FAILURE, Black's Law Dictionary (12th ed. 2024)

But the best evidence the FMECA relates to the "performance and reliability" of the P320 comes from the Army itself. Attached to the Finkelman declaration is an e-mail from Thomas Vass, who Finkelman describes as "an Army representative" and as "Sig Sauer's primary point of contact regarding the MHS Contract." (Finkelman Decl. ¶ 8).

In his e-mail, Vass states "[t]he Army position would be to oppose the distribution to the public of the FMECA document as it potentially reveals

80835709.v1

Appellate Case: 25-8006    Page: 16    Date Filed: 08/14/2025 Entry ID: 5548003

critical information about the handgun (design, ***reliability, performance***, etc.).)" (Finkelman Decl. p. 43).

There is no question the FMECA relates to the "performance and reliability" of the P320 and, as a result, Instruction 523.024 "[d]oes not provide authority to withhold from public release unclassified information regarding … evaluations of performance and reliability of military and space equipment." (Finkelman Decl. § 1.1(d), at p. 10).

Finally, Finkelman's hearsay statement that the Army is opposed to public distribution of the FMECA (*see* Finkelman Decl. ¶¶ 10-11) ignores, once again, the fact the genie is out of the bottle. Finkelman bases his statement of the Army's position on a July 21, 2025 e-mail (*see* Finkelman Decl. p. 43), which was well ***before*** the FMECA had been publicly disclosed.[11]

Accordingly, Sig Sauer has failed to show any reason for sealing the FMECA, much less the required "compelling reason."[12]

---

[11] Moreover, the July 21, 2025 e-mail states only that public release of the FMECA could "***potentially***" reveal information about the handgun; "potentially" is not a synonym for "compelling."

[12] Glasscock has filed a motion for leave to file his response to Sig Sauer's motion for leave to appeal the District Court's order granting class certification under seal, citing the fact his response will rely on sealed exhibits, *i.e.*, the FMECA and the other documents which refer to the FMECA.

Glasscock does not otherwise attempt to show why ***any*** document should be filed under seal.

80835709.v1

## IV. Sig Sauer's legal arguments are misplaced

None of the cases cited by Sig Sauer support its request for sealing. Sig Sauer asserts in its motion that "[t]his situation is most analogous to *Perkins v. United States*, where the court **sealed** the U.S. Navy's 'shipbuilding drawings (design plans, blueprints, schematics) and specifications for the U.S.S. Sacramento and other similar ships.'" (Mot. at 12) (emphasis added). But the court in *Perkins* did not seal any documents; it only considered whether the United States could produce certain documents *in discovery* marked "Confidential" under a protective order. *See* 2024 WL 707682 at *2 ("The government's proposed amended protective order (Dkt. 41-1) will be entered.") ("The United States' motion (Dkt. 41) should be granted and the materials at issue should be treated as 'confidential.'").

Rule 26(c) provides that a protective order may be issued for "good cause, but "good cause" and the "compelling reasons" needed to seal judicial records under this Court's binding precedent are two different standards. *See Marden's Ark, Inc. v. UnitedHealth Grp., Inc.*, 534 F. Supp. 3d 1038, 1050 (D. Minn. 2021) ("[e]ven if 'good cause' were the applicable standard (and it is not) …"); *Hudock v. LG Elecs. U.S.A., Inc.*, No. 0:16-CV-1220-JRT-KMM, 2020 WL 2848180, at *2 (D. Minn. June 2, 2020) (comparing the "stricter

80835709.v1

'compelling reason'" standard to the "more lenient 'good cause'" standard). *Perkins* is therefore inapposite.

Sig Sauer's relies on *Taylor v. Kellog Brown & Root Services, Inc.*, No. 2:09CV341, 2009 WL 10689733, at *2 (E.D. Va. Dec. 18, 2009), is equally misplaced. There, the court rejected the defendant's effort to seal its contract with the government because the contract "does not contain any material information which is not already in the public domain." 2009 WL 10689733, at *2. The court also declined to seal numerous other exhibits, noting "[t]hese Exhibits are all publically [sic] available." *Id.* at *3. The only document the court did seal was of "limited significance … to the case at hand." *Id.*[13]

*Taylor* therefore only further underscores why sealing is inappropriate here: the FMECA is already publicly available and was repeatedly cited by the District Court in granting Glasscock's motion for class certification—the very subject of Sig Sauer's motion for leave to appeal.

## V.    The public interest in the FMECA is compelling

This Court has explained that in determining whether to seal judicial records a court must "weigh[] the competing interests." *IDT Corp. v. eBay*,

---

[13] Sig Sauer also cites *KM Enterprises*, where the court similarly found it was appropriate to seal documents only because "they are not among 'the materials that formed the basis of the parties' dispute and the district court's resolution." *KM Ent., Inc. v. Global Traffic Tech., Inc.,* 725 F.3d 718, 734 (7th Cir. 2013).

80835709.v1

709 F.3d 1220 at 1224; *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d at 1376. As noted above, Sig Sauer has not shown a compelling public interest in sealing the FMECA. But the public interest in unsealing the FMECA is compelling.

First, there is no question the FMECA contains "information [at] the very heart of Plaintiff's allegations against [Sig Sauer]—it is what the lawsuit is about." *Marden's Ark,* 534 F. Supp. 3d at 1049. This is evidenced by the District Court's serial references to it, and by Sig Sauer's desire to put it before this Court. As a result, the presumption of access the FMECA is at its zenith. *See Flynt v. Lombardi*, 885 F.3d at 511 (when matters directly affect an adjudication, the presumption of access can only "be overcome if the party seeking to keep the records under seal provides compelling reasons for doing so").

Second, this Court has specifically recognized the public interest in protecting both civilians and soldiers from defective weapons. In a case involving a defective hand grenade that injured a soldier, this Court wrote: "We believe the public interest in human life and health requires the protection of the law against the manufacture of defective explosives, whether they are to be used by members of the public at large or members of the public serving in our armed forces." *Foster v. Day & Zimmermann, Inc*., 502 F.2d 867, 871 (8th Cir. 1974).

80835709.v1

Appellate Case: 25-8006     Page: 20     Date Filed: 08/14/2025 Entry ID: 5548003

The need for public access to documents relating to allegations that an allegedly defective handgun was knowingly sold to consumers, law enforcement, and the military is of the highest order.

Third, a Google search for "Sig Sauer P320 FMECA" reveals numerous websites and video site, all discussing the FMECA.



80835709.v1

As noted above, more than 100,000 viewers have watched these podcasts on the P320, in which the FMECA was prominently featured. Sig Sauer's own Vice President of Consumer Affairs went on another podcast to discuss the FMECA.

As such, *The Trace*'s description of the public interest in the FMECA is not hypothetical—it is real.

## Conclusion

Accordingly, *The Trace* asks this Court to grant its motion to intervene for the limited purpose of objecting to Sig Sauer's Motion to File Sealed Appendix and to Glasscock's Motion for Leave to File Under Seal, together with such other and further relief as this Court deems just.

Dated: August 14, 2025    Respectfully submitted,

LATHROP GPM LLP

By: */s/ Bernard J. Rhodes*
    Bernard J. Rhodes    MO #29844
    2345 Grand Blvd., Suite 2200
    Kansas City, MO 64108-2684
    Tele: (816) 292-2000
    Fax: (816) 292-2001
    Email:bernie.rhodes@lathropgpm.com

    ATTORNEYS FOR MOVANT TRACE
    MEDIA, INC.

80835709.v1

Appellate Case: 25-8006   Page: 22   Date Filed: 08/14/2025 Entry ID: 5548003