No. 25-8006

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

JOSHUA GLASSCOCK, on behalf of himself and all others similarly situated,

*Plaintiff-Respondent,*

v.

SIG SAUER, INC.,

*Defendant-Petitioner.*

On Petition for Permission to Appeal from the United States District Court for the Western District of Missouri (Southern Division) Case No. 6:22-cv-03095-MDH | Hon. M. Douglas Harpool

## DECLARATION OF ERIC R. FINKELMAN

I, Eric R. Finkelman, hereby swear under the penalty of perjury that the following is true and correct to the best of my knowledge and belief:

1.     I am Assistant General Counsel for Litigation at Sig Sauer, Inc. ("Sig Sauer").  I make this declaration based on my personal knowledge and information provided to me in my capacity as an employee of Sig Sauer.  I respectfully submit this declaration in support of Sig Sauer's opposition to third-party Intervenor Trace Media, Inc.'s Motion to Intervene for the Limited Purpose of Opposing Sig Sauer's Motion to File Sealed Appendix and Plaintiff's Motion for Leave to File Under Seal ("Motion to Intervene").

2.     This declaration incorporates my earlier declaration filed in this Court on August 11, 2025 in support of Sig Sauer's Motion to Seal ("August 11 Declaration").  A true and correct copy of my August 11 Declaration is attached hereto as **Exhibit 1**.

3.     As explained in my August 11 Declaration, since joining Sig Sauer and becoming responsible for oversight of litigation involving the P320, I have learned it is Sig Sauer's belief that the FMECA was designated by the Army as subject to Department of Defense Instruction

2

5230.24, Distribution Statement D. *See* Ex. 1 ¶¶ 5-7; Ex. A. For example, Sig Sauer maintained the documents in a controlled manner as they related to the MHS Contract.

4. Further, as noted in my August 11 Declaration, on July 17, 2025, I asked Mr. Thomas Vass, an Army representative and Sig Sauer's primary point of contact regarding the MHS Contract, whether a document designated as subject to Distribution Statement D should be distributed to the public. *See* Ex. 1 ¶¶ 8-11; Ex. B. I made this inquiry based on my understanding from Sig Sauer that the document was protected by Distribution Statement D. *See* Ex. 1 ¶ 5.

5. In response, Mr. Vass informed me that Sig Sauer should object to the public distribution of a document with a Distribution Statement D designation. *See id.* Ex. B.

6. After Trace filed a Motion to Intervene in this Court on August 14, 2025, Sig Sauer continued its dialogue with the Army to confirm the Army's position on the confidentiality designation and the appropriate sphere of distribution of the FMECA, including why it is that the FMECA Documents do not bear a classification marking on their face.

3

7.     Sig Sauer was in correspondence with Army representatives on a nearly daily basis last week to resolve this issue.  I was informed, however, that the individuals at the Army that were responsible for the decision as to the designation of the FMECA Documents were unavailable last week.

8.     Since it is the Army's designation at issue, the Army needs additional time to consider the confidentiality status of the FMECA Documents and to determine whether the Army wishes to submit information in support of the materials remaining under seal.  I declare under penalty of perjury that the foregoing is true and correct.

Dated this 25th day of August 2025.

_____
Eric R. Finkelman
Assistant General Counsel,
Litigation, Sig Sauer, Inc.

# EXHIBIT 1

No. 25-_____    **25-8006**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

JOSHUA GLASSCOCK, on behalf of himself and all others similarly situated,

*Plaintiff-Respondent,*

v.

SIG SAUER, INC.,

*Defendant-Petitioner.*

**FILED**

AUG 1 1 2025

U.S. Court of Appeals
Eighth Circuit

On Petition for Permission to Appeal from the United States District Court for the Western District of Missouri (Southern Division) Case No. 6:22-cv-03095-MDH | Hon. M. Douglas Harpool

## DECLARATION OF ERIC R. FINKELMAN IN SUPPORT OF PETITIONER SIG SAUER, INC.'S MOTION TO SEAL

**RECEIVED**

AUG 1 1 2025

**U.S. COURT OF APPEALS
EIGHTH CIRCUIT**

I, Eric R. Finkelman, hereby swear under the penalty of perjury that the following is true and correct to the best of my knowledge and belief:

1.     I am Assistant General Counsel for Litigation at Sig Sauer, Inc. ("Sig Sauer"). In this role, I am familiar with Sig Sauer's business operations and documents.  I respectfully submit this declaration in support of Sig Sauer's motion to seal, recognizing the U.S. Army's determination that the information contained within the Appendix to its Rule 23(f) Petition references confidential information.

2.     The Failure Modes, Effects, and Criticality Analysis (FMECA) was prepared for and submitted to the Army as a contractually required deliverable under the Modular Handgun System Contract ("MHS Contract").

3.     The FMECA identifies potential failures in all pistol platforms, analyzes the risks of those failures, and details the design decisions taken by Sig Sauer's engineering team to mitigate or eliminate those risks.

4.     The FMECA and the engineering decisions made therein were specific to the Army MHS Contract.

1

5. The Army designated the FMECA as subject to the Department of Defense's Instruction 5230.24, Distribution statement D, which provides that its "[d]istribution [is] authorized to the Department of Defense and U.S. DoD contractors only," as well as "military and civilian employees of the DoD or U.S. DoD contractors or grantees who enter into a contract or award with the DoD to perform a specific job, to supply labor and materials, or for the sale of products and services if such distribution is in furtherance of that contractual purpose."

6. A true and correct copy of DoDI 5230.24 Distribution Statement D is attached hereto as **Exhibit A**.

7. Since its creation, Sig Sauer has designated the FMECA as containing confidential information and sought to restrict its public release in compliance with Distribution Statement D.

8. Mr. Thomas Vass is an Army representative and Sig Sauer's primary point of contact regarding the MHS Contract.

9. On July 17, 2025, third-party Intervenor Trace Media, Inc. ("Trace") filed a Motion to Intervene for the Limited Purpose of Moving to Unseal Exhibits (ECF No. 181), where Trace seeks to unseal, among other things, the FMECA documents and other materials discussing the

2

FMECA that were sealed by the District Court. *See* Dkts. 127, 128-13, 128-14.

10. Later on July 25th, after receiving Trace's Motion to Intervene, I reached out to Mr. Vass and inquired about the Army's position on whether it was opposed to the public distribution of the FMECA since it is covered by Distribution Statement D.

11. The emails attached as **Exhibit B** to this Declaration are true and accurate correspondence between Mr. Vass and me regarding the Army's position with respect to the distribution of the FMECA and the information contained therein.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 11th day of August 2025.

/s/ _____

Eric R. Finkelman
Assistant General Counsel,
Litigation, Sig Sauer, Inc.

3

# EXHIBIT A



# DoD Instruction 5230.24

## Distribution Statements on DoD Technical Information

---

**Originating Component:**   Office of the Under Secretary of Defense for Research and Engineering

**Effective:**   January 10, 2023

**Releasability:**   Cleared for public release.  Available on the Directives Division Website at https://www.esd.whs.mil/DD/.

**Reissues and Cancels:**   DoD Instruction 5230.24, "Distribution Statements on Technical Documents," August 23, 2012, as amended

**Approved by:**   Heidi Shyu, Under Secretary of Defense for Research and Engineering

---

**Purpose:**   In accordance with the authority in DoD Directive (DoDD) 5137.02 and pursuant to Section 133a of Title 10, United States Code (U.S.C.), this issuance:

- Establishes policies, assigns responsibilities, and provides procedures for assigning distribution statements on technical information, including: research, development, test and evaluation (RDT&E); engineering; acquisition; and sustainment information, to denote the extent to which the technical information is available for secondary release and distribution without additional approvals or authorizations.

- Establishes a standard framework and markings for managing, sharing, safeguarding, and distributing technical information in accordance with national and operational security, privacy, records management, intellectual property, Federal procurement, and export-control policies, regulations, and laws.

- Aligns marking procedures for controlled technical information (CTI) in accordance with procedures described in DoD Instruction (DoDI) 5200.48 and Part 2002 of Title 32, Code of Federal Regulations (CFR).

- Helps originators of technical information determine to what extent it must be controlled in accordance with DoDD 5230.25.

# TABLE OF CONTENTS

SECTION 1: GENERAL ISSUANCE INFORMATION ............................................................. 4
    1.1. Applicability. ............................................................................................................ 4
    1.2. Policy. ....................................................................................................................... 5
SECTION 2: RESPONSIBILITIES ................................................................................................ 6
    2.1. Deputy Chief Technology Officer for Science and Technology (DCTO(S&T)).............. 6
    2.2. Administrator, Defense Technical Information Center (DTIC). ...................................... 6
    2.3. Under Secretary of Defense for Acquisition and Sustainment. ...................................... 6
    2.4. Under Secretary of Defense for Policy. .......................................................................... 6
    2.5. Under Secretary of Defense for Intelligence and Security. ............................................ 6
    2.6. General Counsel of the Department of Defense. ............................................................. 7
    2.7. Director of Administration and Management. ................................................................. 7
    2.8. DoD Component Heads. ................................................................................................. 7
SECTION 3: PROCEDURES .......................................................................................................... 9
    3.1. General. ............................................................................................................................ 9
    3.2. Public Release of Technical Information. ....................................................................... 11
    3.3. Classified Technical Information. ................................................................................... 12
    3.4. Unclassified CTI. ............................................................................................................ 12
SECTION 4: DISTRIBUTION STATEMENTS FOR USE ON TECHNICAL INFORMATION ....... 15
    4.1. General. ............................................................................................................................ 15
    4.2. Distribution Statements and Notices. .............................................................................. 16
        a. Distribution Statement A. ............................................................................................. 16
        b. Distribution Statement B. ............................................................................................. 16
        c. Distribution Statement C. ............................................................................................. 16
        d. Distribution Statement D. ............................................................................................. 17
        e. Distribution Statement E. ............................................................................................. 17
        f. Distribution Statement F. ............................................................................................. 17
        g. REL TO Notice. ........................................................................................................... 18
    4.3. Defense Categories. ........................................................................................................ 18
        a. CTI. .............................................................................................................................. 18
        b. Contractor Performance Evaluation. ........................................................................... 18
        c. Critical Technology. ..................................................................................................... 19
        d. Direct Military Support. ............................................................................................... 19
        e. Export Controlled. ........................................................................................................ 19
        f. Foreign Government Information. ................................................................................. 20
        g. International Agreements (IAs). .................................................................................... 20
        h. Operations Security. ..................................................................................................... 20
        i. Patents and Inventions. ................................................................................................. 21
        j. Proprietary Business Information. ................................................................................ 21
        k. Small Business Innovation Research (SBIR). .............................................................. 21
        l. Software Documentation. .............................................................................................. 21
        m. Test and Evaluation. .................................................................................................... 21
        n. Vulnerability Information. ............................................................................................ 22

Appellate Case: 25-8000016    Page: 12    Date Filed: 08/25/2025    Entry ID: 5546135418

SECTION 5: THIRD PARTY–IMPOSED MARKINGS ............................................................ 24
    5.1.  General. ..................................................................................................................... 24
    5.2.  Restrictive Markings. ............................................................................................... 24
        a.  General. .............................................................................................................. 24
        b.  Procurement Contracts. ...................................................................................... 25
        c.  Instruments Other Than Federal Acquisition Regulation-Based Contracts. .............. 26
        d.  Other Forms of Proprietary Information. ........................................................... 26
        e.  Copyright. .......................................................................................................... 26
    5.3.  Reviewing the Applied Markings. ........................................................................... 27
        a.  Step 1. ................................................................................................................ 27
        b.  Step 2. ................................................................................................................ 27
        c.  Step 3. ................................................................................................................ 27
GLOSSARY .................................................................................................................................. 29
    G.1.  Acronyms. ............................................................................................................... 29
    G.2.  Definitions. .............................................................................................................. 29
REFERENCES ............................................................................................................................... 35

TABLES

Table 1.  Distribution Statements and Their Corresponding Categories for Use ........................ 23

FIGURES

Figure 1.  Example CUI Designation Indicator and Distribution Statement for CTI .................. 14
Figure 2.  Example Distribution Statement for CTI .................................................................... 14
Figure 3.  Export-Control Warning............................................................................................. 20

Appellate Case: 25-8000016    Page: 13    Date Filed: 08/25/2025    Entry ID: 5556135143

# SECTION 1:  GENERAL ISSUANCE INFORMATION

## 1.1.  APPLICABILITY.

This issuance:

    a.  Applies to:

      (1)  OSD, the Military Departments, the Office of the Chairman of the Joint Chiefs of Staff and the Joint Staff, the Combatant Commands, the Office of Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities within the DoD (referred to collectively in this issuance as the "DoD Components").

      (2)  Newly created, revised, or previously unmarked classified and unclassified technical information originated or managed by all DoD-funded RDT&E programs and DoD technical information originated or managed by DoD acquisition and sustainment activities, including system design, development, production, and procurement; sustainment, including logistics, maintenance, and materiel readiness; or collaboration activities.

      (3)  Newly created, revised, or previously unmarked information, whether in tangible (e.g., technical report, model, prototype, blueprint, photograph, plan, instruction, operating manual) or intangible form (e.g., technical service or visual description), including but not limited to:

        (a)  Engineering drawings.

        (b)  Configuration-management documentation.

        (c)  Engineering data and associated lists.

        (d)  Standards.

        (e)  Specifications.

        (f)  Technical manuals, reports, and orders.

        (g)  Blueprints, plans, and instructions.

        (h)  Computer software and computer software documentation.

        (i)  Catalog-item identifications.

        (j)  Data sets, studies and analyses, and other technical information that can be used or be adapted for use to design, engineer, produce, manufacture, operate, repair, overhaul, or reproduce any military or space equipment or technology concerning such equipment.

(k)  Other types of technical data.

b.  Does **not** apply to technical information categorized as cryptographic and communications security, communications, and electronic intelligence and such other categories that may be designated by the; Director, National Security Agency; Chief, Central Security Service; or the Under Secretary of Defense for Intelligence and Security.

c.  May not be used by the DoD Components as authority to deny information to Congress or any Federal, State, or local government agency that requires such information for regulatory or other official government purposes.  The DoD Component will notify the recipient when information is subject to DoD distribution controls.

d.  Does not provide authority to withhold from public release unclassified information regarding DoD operations, policies, activities, or programs, including the costs and evaluations of performance and reliability of military and space equipment or any other information that is not exempt from release in accordance with DoDD 5400.07; DoDIs 5200.01, 5230.09, and 5230.29; DoD Manual (DoDM) 5200.01; or DoDM 5230.30.

## 1.2.  POLICY.

The DoD will pursue a coordinated and comprehensive program to promote sharing technical information to the maximum extent possible to facilitate the efficient use of resources in accordance with safeguarding requirements as specified in national and DoD information and operations security policies, procurement regulations, policies, and procedures, including those related to competitive procurement, regulations, and laws specified in this issuance.

Appellate Case: 25-8006    Page: 16    Date Filed: 08/25/2025 Entry ID: 5556858

# SECTION 2: RESPONSIBILITIES

## 2.1. DEPUTY CHIEF TECHNOLOGY OFFICER FOR SCIENCE AND TECHNOLOGY (DCTO(S&T)).

Under the authority, direction, and control of the Under Secretary of Defense for Research and Engineering, the DCTO(S&T) takes such actions that may be required to ensure consistent and appropriate implementation and control of technical information within this issuance's scope.

## 2.2. ADMINISTRATOR, DEFENSE TECHNICAL INFORMATION CENTER (DTIC).

Under the authority, direction, and control of the Under Secretary of Defense for Research and Engineering and in addition to the responsibilities in Paragraph 2.8., the Administrator, DTIC:

   a. Acts as the DoD scientific and technical information program manager.

   b. Maintains permanent documentation of controlling DoD office decisions for classifying and distributing technical information.

## 2.3. UNDER SECRETARY OF DEFENSE FOR ACQUISITION AND SUSTAINMENT.

The Under Secretary of Defense for Acquisition and Sustainment directs implementation of this issuance in accordance with DoDI 5000.90 to protect technical information developed or used within the Defense Acquisition System. Such implementation includes technology security and foreign disclosure reviews by appropriate authorities of technical information proposed for release to international partners or other external organizations.

## 2.4. UNDER SECRETARY OF DEFENSE FOR POLICY.

The Under Secretary of Defense for Policy:

   a. Establishes DoD policy for international technology transfers, including, but not limited to, defense-related goods, services, and technologies.

   b. Provides policy oversight of DoD activities relating to export controls and technology transfers.

   c. Establishes and oversees the implementation of national and DoD policy for the disclosure of classified military information and foreign-engagement policy.

## 2.5. UNDER SECRETARY OF DEFENSE FOR INTELLIGENCE AND SECURITY.

The Under Secretary of Defense for Intelligence and Security:

Appellate Case: 25-8006    Page: 16    Date Filed: 08/25/2025 Entry ID: 5556658

a. Integrates the guidance in this issuance into the DoD information security and DoD operations security policies and programs, as applicable.

b. Exercises acquisition authority, as delegated by the Under Secretary of Defense for Acquisition and Sustainment, the Director of National Intelligence, or other appropriate official, for Intelligence, Counterintelligence, and Security technologies, systems, and equipment.

c. Ensures the exercise of acquisition authority by the heads of the Defense Intelligence, CI, and Defense Security Components is in coordination with the Under Secretary of Defense for Acquisition and Sustainment.

## 2.6. GENERAL COUNSEL OF THE DEPARTMENT OF DEFENSE.

The General Counsel of the Department of Defense advises the DoD Components regarding the statutory and regulatory requirements governing the export or other distribution of technical information.

## 2.7. DIRECTOR OF ADMINISTRATION AND MANAGEMENT.

The Director of Administration and Management:

a. Issues policy directing that the Washington Headquarters Services Defense Office of Prepublication and Security Review (DOPSR), or DoD Component public affairs personnel, properly review technical information submitted for public release clearance in accordance with DoDI 5230.09 to determine whether Distribution Statement A, as described in Paragraph 4.2.a., is appropriate for the technical information.

b. Processes appeals when public release is denied based upon this issuance, in accordance with DoDI 5230.29.

## 2.8. DOD COMPONENT HEADS.

The DoD Component heads:

a. Ensure that this issuance is implemented across their respective DoD Components in a uniform, consistent manner.

b. Ensure the Component's designation, handling, and decontrolling—including identification, sharing, marking, safeguarding, storage, distribution, and destruction—of controlled unclassified information (CUI) is in accordance with DoDI 5200.48.

c. Ensure that the controlling DoD office:

(1) Exercises its inherent U.S. Governmental responsibility to determine the appropriate marking of controlled technical information in accordance with this issuance, DoDI 5200.48, DoDI 5230.09, and DoDM 5200.01.

Appellate Case: 25-8006   Page: 17   Date Filed: 08/25/2025 Entry ID: 5556858

(2)  Correctly marks and applies the appropriate distribution statement for all technical information regardless of media or form, including, but not limited to, RDT&E, sustainment, and logistics information.

d.  Establish and maintain active education and training programs to provide a basic understanding of distribution statements and export-control markings and to inform personnel of their responsibilities for the proper handling and protection of marked technical information.

e.  Ensure that managers of DoD technical programs assign distribution statements to all technical information originating in their programs.

f.  Ensure that contractors and award recipients generating or holding CTI marked with Distribution Statements B through F comply with the cybersecurity requirements and export-control requirements directed by Clauses 252.204-7012 and 252.225-7048 of the Defense Federal Acquisition Regulation Supplement (DFARS), respectively.

g.  Pursuant to Chapters 29, 31, and 33 of Title 44, U.S.C., and Subchapter B of Chapter XII of Title 36, CFR, ensure that all records created or received in accordance with this issuance, regardless of format or medium, are maintained and managed in accordance with DoD Component records management issuances and National Archives and Records Administration–approved dispositions to ensure proper maintenance, use, accessibility, and preservation.

h.  Integrate operations security into DoD technical information distribution considerations to protect critical information and indicators associated with DoD technical information, in accordance with DoDD 5205.02E.

Appellate Case: 25-8006     Page: 18     Date Filed: 08/25/2025 Entry ID: 5556858

# SECTION 3: PROCEDURES

## 3.1. GENERAL.

a. All DoD Components generating or responsible for technical information will determine who is authorized to access the information and apply the appropriate markings before primary distribution. Distribution statements will be used in addition to applicable classification markings pursuant to Volume 2 of DoDM 5200.01 and CUI markings pursuant to DoDI 5200.48.

b. DoD distribution statements are not required on technical proposals or similar documents submitted by contractors seeking DoD funds or contracts; however, markings specified by applicable acquisition regulations apply.

c. Distribution statements assigned to technical information by the controlling DoD office control secondary distribution in accordance with Volume 1 of DoDM 3200.14.

d. Technical information supporting acquisition, sustainment, logistics, maintenance, repair, supply, and RDT&E that is subject to the restrictions of this issuance will be marked, maintained, distributed, and controlled.

e. Unless otherwise authorized by the controlling DoD office, non-U.S. Government entities or individuals are strictly prohibited from further distributing technical information subject to the restrictions in this issuance.

f. All newly created, revised, or previously unmarked classified and unclassified DoD technical information will be assigned a distribution statement as described in Paragraph 4.2.

g. Distribution Statement X has been cancelled. Instead, use the export-control category described in Paragraph 4.3.e. Subsequent distribution of formerly Distribution Statement X information will display Distribution Statement C with export control as the stated reason for the marking.

h. Selection of the appropriate distribution statement is based on a number of considerations, including, but not limited to:

(1) Public release procedures specified in Enclosure 3 of DoDI 5230.29.

(2) Export controls in accordance with DoDD 5230.25; Parts 120–130 of Title 22, CFR (also known and referred to in this issuance as the International Traffic in Arms Regulations (ITAR)); and Parts 730–774 of Title 15, CFR (also known and referred to in this issuance as the Export Administration Regulations (EAR)).

(3) Export controls in accordance with Parts 110 and 810 of Title 10, CFR.

(4) Intellectual property and data-rights licenses for contract deliverables as described in Part 227 of the DFARS and the terms of the applicable transactional instrument.

Appellate Case: 25-8006   Page: 19   Date Filed: 08/25/2025   Entry ID: 5556858

(5)  Relevant security classification guides, science and technology protection plans, program protection plans, and technology area protection plans as described in DoDI 5000.83.

i.  Technical information in preliminary or working-draft form will be marked with a temporary notice or distribution statement pending proper security classification and distribution statement review as required by this issuance.

j.  The first page or cover of any technical document will clearly display the distribution statement including the letter code and full statement described in Section 4, regardless of media or format.

(1)  The distribution statement will appear in Block 12 of the Standard Form (SF) 298, "Report Documentation Page," available on the U.S. General Services Administration Website at https://www.gsa.gov/forms-library/report-documentation-page, in accordance with Volume 1 of DoDM 3200.14 and DFARS Clause 252.235-7011.

(2)  If the technical information is not prepared in hard copy or paper form and is prepared digitally or in any medium that cannot practicably have a cover or title page, the appropriate distribution statement will be affixed to all physical and digital items by other means in as obvious a position as possible.  Additionally, an oral presentation of the information, including voice recordings, will note the distribution statement.

k.  Distribution statements will remain in effect until changed or removed by the controlling DoD office.  Removal of or tampering with control markings by unauthorized personnel is strictly prohibited.

(1)  If technical information has been declassified pursuant to Executive Order 13526 and the DoD Mandatory Declassification Review Program described in DoDM 5230.30, the distribution statement will be changed to reflect the final release determination.

(2)  Technical information that has been reviewed pursuant to the Section 552 of Title 5, U.S.C. (also known as the Freedom of Information Act), and processed in accordance with DoDM 5400.07, and Section 2002.44(b) of Title 32, CFR, will be marked with a distribution statement to reflect the final release determination.

l.  Each controlling DoD office will establish and maintain a procedure to review active and non-archived technical information for which it is responsible in order to increase availability when conditions permit.  When release restrictions no longer apply, the controlling DoD office will obtain public-release determinations in accordance with DoDI 5230.09 and assign Distribution Statement A, cancel any other distribution statement, and notify DTIC and all known holders of the technical information of the change.

m.  The controlling DoD office will notify DTIC, other known repositories and authorized holders promptly so that they can have an authoritative record of controlling DoD office decisions regarding classification and distribution when:

(1)  The controlling DoD office's address changes.

Appellate Case: 25-8006     Page: 20     Date Filed: 08/25/2025   Entry ID: 5556858

(2)  The controlling DoD office is redesignated.

(3)  Classification markings, U.S. Government data-rights, distribution statements, or export-control warnings are changed or removed.

n.  When possible or appropriate, those parts of a document that contain classified information or CTI will be prepared as an attachment, addendum, annex, enclosure, or similar removable section to allow separate distribution of the basic document at the lowest level of classification and to the widest possible audience.

o.  Metadata describing technical information (e.g., title, abstract, keywords) will be written for the widest possible distribution in accordance with law, regulation, DoD policy, relevant security classification guides, science and technology protection plans, program protection plans, technology-area protection plans, or any other guidance pertaining to the withholding or release of technical information contained therein.  When practical, metadata will be written in such a way that its content is unclassified and can be reviewed and determined by the DOPSR or the DoD Component public affairs personnel to be appropriate for Distribution Statement A.

p.  Unclassified materials in any medium marked with Distribution Statement B, C, D, E, or F will be handled in accordance with procedures for banner marking, handling, storage, transmission, decontrol, and destruction described in DoDI 5200.48.

q.  When no longer needed, CUI will be destroyed in accordance with DoDI 5200.48.

r.  All records, regardless of format or medium, will be maintained and managed pursuant to National Archives and Records Administration–approved dispositions to ensure the proper maintenance, use, accessibility, and preservation.

## 3.2.  PUBLIC RELEASE OF TECHNICAL INFORMATION.

a.  DoDI 5230.09 requires a review of all DoD information before public release.  Except as required by applicable Federal statutes or regulations or Executive orders, scientific and technical information resulting from unclassified fundamental research is exempt from prepublication controls and the review required by DoDI 5230.29.

b.  Before submission to the DOPSR, DoD Components will ensure that all required preliminary reviews are conducted in accordance with DoDI 5230.29.

c.  The DOPSR will approve for public release any official DoD information meeting the publication conditions of DoDI 5230.29.  In accordance with DoDI 5230.29, DoD Component clearance authority may be delegated to the lowest level competent to evaluate the content and implications of public release of the information.

d.  DoD technical information approved for public release will be marked "Distribution Statement A.  Approved for public release: distribution unlimited."

e.  Official DoD information, including, but not limited to, audio-visual materials or press releases that meet the criteria in DoDD 5122.05, will be coordinated through the Office of the Assistant to the Secretary of Defense for Public Affairs prior to public release.

## 3.3.  CLASSIFIED TECHNICAL INFORMATION.

a.  Classified technical information will be marked in accordance with Volume 2 of DoDM 5200.01 and assigned Distribution Statements B, C, D, E, or F.  The distribution statement assigned to classified information will remain after declassification until the controlling DoD office changes or removes it.

b.  If a classified document contains CTI, "CUI Warning Box for Classified Material" will appear on the first page of the document to alert readers to the presence of CUI.  DoD Components will follow the format as described in DoDI 5200.48.

c.  Declassified technical information that has no assigned distribution statement will be reviewed for possible CTI content and be handled as Distribution Statement E ("Distribution authorized to DoD Components only") until the controlling DoD office changes it.

d.  Declassified technical information containing CTI will be marked with a "CUI Designation Indicator" on the first page of the document using the marking and format described in DoDI 5200.48.

e.  Security classification guides will be marked in accordance with DoDM 5200.45.

## 3.4.  UNCLASSIFIED CTI.

a.  All unclassified CTI must be marked as CUI in accordance with DoDI 5200.48.  DoD legacy material, including CTI, will not be required to be remarked or redacted while it remains under DoD control or is accessed online and downloaded for use within the DoD.  However, any such information or new derivative information must be marked as CUI if a careful analysis determines that it qualifies as CUI.

b.  Unclassified CTI originated by or under the control of the DoD will be marked with a distribution statement.

c.  CUI that is not technical information as defined in the Glossary will be marked in accordance with DoDI 5200.48.

d.  Procedures for marking DoD unclassified CTI align with the requirements of DoDI 5200.48.  DoD-controlled unclassified technical information will include "CUI" in the banner and footer of each page and must include a distribution statement.  The controlling DoD office will determine distribution availability in accordance with Paragraph 3.1.h. and select the appropriate reason and audience for the content.

Appellate Case: 25-8006      Page: 22      Date Filed: 08/25/2025  Entry ID: 5556858

e.  The first page or cover of any document or material containing CTI will include a CUI designation indicator as described in DoDI 5200.48.  The indicator will include:

(1)  Controlled By.

Insert the name of the DoD Component unless the first page or cover is on letterhead stationery.

(2)  Controlled By.

Insert the name of the DoD office.

(3)  CUI Category.

For DoD unclassified CTI, the overarching CUI category authorizing the use of distribution statements is "CTI."

(4)  Distribution Statement.

Insert the letter (B, C, D, E, or F) designating the appropriate distribution statement, described in Paragraph 4.2.

(5)  Point of Contact.

Include the controlling DoD office's telephone number and/or office mailbox address.  It is good practice to ensure that the telephone number and mailbox address are valid in case of personnel turnover.

f.  Place the indicator at the bottom-right side of the first page or cover page, if applicable, of all technical information containing CUI, including classified material.

g.  Directly beneath and separate from the CUI designation indicator box, affix the distribution statement in its entirety, including authorized audience, category, date of determination, and controlling DoD office.  See Figures 1 and 2 for examples.

Appellate Case: 25-8006     Page: 28     Date Filed: 08/25/2025 Entry ID: 5556858

**Figure 1.  Example CUI Designation Indicator and Distribution Statement for CTI**

```
Controlled By: OUSD(R&E)
Controlled By: Defense Advanced Research Projects Agency
CUI Category: CTI, Proprietary Business Information
Distribution Statement: E
POC: dod.component.mailbox@mail.mil
```

**Figure 2.  Example Distribution Statement for CTI**

```
Distribution Statement E.  Distribution authorized to DoD only; Proprietary Business
Information; 18 OCT 2008.  Other requests for this document must be referred to Defense
Advanced Research Projects Agency, ATTN: TIO, 675 North Randolph Street Arlington, VA
22203-2114.
```

    h.  For newly originated, revised, or previously unmarked technical information, the controlling DoD office will determine whether the information contains export-controlled technical information.  DoDD 5230.25, the ITAR, and the EAR provide guidance for making this determination.  Personnel responsible for technology security, foreign disclosure, release reviews, or export-control analysis may provide additional guidance.

    i.  All information found to contain export-controlled technical information will be marked with the export-control warning in Paragraph 4.3.e.(2).  Any information so marked must also be assigned Distribution Statement B, C, D, or E and specify "Export Controlled" as a reason for the assignment.  This information must also include the notice to accompany the release of export-controlled data specified in DoDD 5230.25.  Such information will be released only to entities qualified to receive export-controlled technical information.

    j.  All technical information delivered to the U.S. Government that includes contractor-owned proprietary data or other third-party intellectual property described in Section 5 will be clearly and legibly marked with the applicable data-rights markings as specified in Clause 252.227-7013, 252.227.7015, or 252.227-7018 of the DFARS, as applicable.  The type of data-rights licenses that the U.S. Government holds will be a consideration when assigning distribution statements.

# SECTION 4: DISTRIBUTION STATEMENTS FOR USE ON TECHNICAL INFORMATION

## 4.1. GENERAL.

a. Distribution statements will be shown on the title page or front cover of any technical document as described in Paragraph 3.1.j and on SF 298, where applicable. Compilations of documents may have different distribution statements governing their distribution if separated from the main document. The distribution statement applicable to the main document will be governed by the most restrictive distribution statement applicable to any part of the main document.

b. The wording of the distribution statements specified by this issuance may not be modified to accommodate additional distribution concerns such as distribution to foreign governments.

(1) Release or disclosure to foreign entities is outside the scope of secondary distribution as defined in the Glossary. Such release or disclosure must be in accordance with DoDD 5230.11 and DoDI 2040.02, as applicable.

(2) Where other markings are authorized and used in accordance with associated law, regulation, or U.S. Government–wide policy, those markings may be used to further inform distribution decisions in accordance with Paragraph 4.2. (e.g., releasable to ("REL TO")).

c. Distribution Statements B, C, D, and E are expressed in a standard format consisting of information in this order:

(1) Authorized audience.

(2) Defense category. This is the reason for the determination as to the extent to which the information is available for secondary release and distribution without additional approvals or authorizations. Categories are listed in Paragraph 4.3. Cite the category heading only, for example, "Controlled Technical Information."

(3) Date of determination.

(4) Controlling DoD office.

d. Up to three reasons or justifications for the non-release of technical information may apply. Therefore, more than one defense category may be cited in a distribution statement. In these instances, the most restrictive reason will govern the overall distribution determination.

e. At the discretion of the controlling DoD office, for purposes of clarification, Distribution Statements B, C, D, and E may begin with the word "Secondary," and the following text may precede the statement: "The [controlling DoD office] authorizes secondary distribution, release, and dissemination to the extent permitted by this distribution statement without additional approvals or authorizations."

Appellate Case: 25-8006     Page: 26     Date Filed: 08/25/2025 Entry ID: 5556858

## 4.2. DISTRIBUTION STATEMENTS AND NOTICES.

The distribution statements and notices described in this section are authorized for use on DoD technical information. A matrix of distribution statements and corresponding reasons appears in Table 1.

### a. Distribution Statement A.

"Distribution Statement A. Approved for public release: distribution is unlimited."

(1) This statement may be used only on unclassified technical information that has been approved for public release by a competent authority in accordance with the procedures described in Paragraph 3.2.

(2) Scientific or technical information resulting from contracted fundamental research efforts will normally be assigned Distribution Statement A, except for those rare and exceptional circumstances where there is a likelihood of disclosing performance characteristics of military systems or of manufacturing technologies that are unique and critical to defense. Extramural research must be scoped and negotiated by the contracting/agreement activity with the contractor and research performer and determined in writing by the contracting/agreement officer to be fundamental research.

(3) This statement will not be used on classified technical information or information containing export-controlled technical information.

(4) This statement may not be used on technical information that was formerly classified or designated as CUI unless such information is approved for public release as described in Paragraph 3.2.

### b. Distribution Statement B.

"Distribution Statement B. Distribution authorized to U.S. Government agencies [category] [date of determination]. Other requests for this document must be referred to [controlling DoD office]."

(1) This statement can apply to classified, CUI, and unclassified technical information.

(2) Distribution is authorized only to employees of U.S. Government Executive Branch departments and agencies and DoD Components.

### c. Distribution Statement C.

"Distribution Statement C. Distribution authorized to U.S. Government agencies and their contractors [category] [date of determination]. Other requests for this document must be referred to [controlling DoD office]."

(1) This statement can apply to classified, CUI, and unclassified technical information.

Appellate Case: 25-8006    Page: 26    Date Filed: 08/25/2025    Entry ID: 5556358

(2) Distribution is authorized only to employees of U.S. Government Executive Branch departments and agencies and DoD Components, individuals, or employers who enter into a contract or award with the U.S. Government to perform a specific job, to supply labor and materials, or for the sale of products and services if such distribution is in furtherance of that contractual purpose.

### d. Distribution Statement D.

"Distribution Statement D.  Distribution authorized to the Department of Defense and U.S. DoD contractors only [category] [date of determination].  Other requests for this document must be referred to [controlling DoD office]."

(1)  This statement can apply to classified, CUI, and unclassified technical information.

(2)  Distribution is authorized only to military and civilian employees of the DoD or U.S. DoD contractors or grantees who enter into a contract or award with the DoD to perform a specific job, to supply labor and materials, or for the sale of products and services if such distribution is in furtherance of that contractual purpose.

### e. Distribution Statement E.

"Distribution Statement E.  Distribution authorized to DoD Components only [category] [date of determination].  Other requests for this document must be referred to [controlling DoD office]."

(1)  This statement can apply to classified, CUI, and unclassified technical information.

(2)  Distribution is authorized only to military personnel and civilian employees of the DoD.

(3)  This statement will not be modified to further restrict access to specific branches or agencies within the DoD.

(4)  Any technical information delivered to DTIC or any other DoD Component information center without a distribution statement will automatically be assigned Distribution Statement E.

### f. Distribution Statement F.

"Distribution Statement F.  Further distribution only as directed by [controlling DoD office] [date of determination] or higher DoD authority."

(1)  This statement can apply to classified, CUI, and unclassified technical information.

(2)  The controlling DoD office or a higher authority must be consulted before the material can be distributed.  Use of this distribution statement cannot override distribution designated in Federal law, regulation, or U.S. Government–wide policy.

(3)  To promote the free flow of information within the DoD, Distribution Statement F will not be used on classified, CUI, or unclassified scientific or technical information governed by the DoD scientific and technical information program described in DoDI 3200.12.

(4)  Other technical information (e.g., technical manuals and orders, weapons, munitions documents) may be assigned Distribution Statement F, provided it will be reviewed on a 5-year cycle to consider a wider secondary distribution audience.

(5)  The controlling DoD office must respond within 30 days to a request for release of technical information marked with Distribution Statement F.  If the controlling DoD office agrees or there is no response within 30 days of receipt of a request to release the information, the information may be released to any DoD Component with Distribution Statement E and release must be documented.

### g.  REL TO Notice.

Information has been predetermined by the DoD controlling agency, in accordance with established foreign disclosure policies, to be releasable through established foreign disclosure procedures and channels to the foreign country or international organization indicated.  The REL TO notice may be used to further inform distribution decisions.  Follow the format described in Volume 2 of DoDM 5200.01.

## 4.3.  DEFENSE CATEGORIES.

Defense categories describe the reasons for safeguarding or applying distribution controls to technical information.  The listed defense categories override authorized reasons enacted in previous issuances but do not affect distribution statements assigned to legacy information in accordance with directives or instructions issued before the effective date of this issuance.

### a.  CTI.

CTI is a category of CUI.  This is technical information with military or space application that is subject to controls on access, use, reproduction, modification, performance, display, release, disclosure, or distribution.  It does not include information concerning general scientific, mathematics, or engineering principles commonly taught in schools, colleges, and universities or information in the public domain.  Authorized distribution statements for CTI are Distribution Statements B, C, D, E, or F or REL TO.

### b.  Contractor Performance Evaluation.

This category protects information in management reviews, records of contract performance evaluation, or other advisory documents evaluating contractor programs, including supplier and product performance information in accordance with DoDI 5000.79.  Authorized distribution statements for contractor performance evaluation are Distribution Statements B, E, or F.

Appellate Case: 25-8006     Page: 28     Date Filed: 08/25/2025 Entry ID: 5556858

### c. Critical Technology.

This category protects information on technologies essential to the design, development, production, operation, application, or maintenance of an article or service that makes or could make a significant contribution to the military potential of any country, including the United States. Such information may be classified or unclassified and is export controlled. Authorized distribution statements for critical technology are Distribution Statements B, C, D, E, or F or REL TO.

### d. Direct Military Support.

This category protects export-controlled technical information of such military significance that release for purposes other than direct support of DoD-approved activities may jeopardize an important technological or operational military advantage of the United States, another country, or a joint U.S.–foreign program. A competent authority will designate such data in accordance with DoDD 5230.25. Cover pages will be marked with the export-control warning shown in Figure 3 in accordance with Part 250 of Title 32, CFR. Authorized distribution statements for direct military support are Distribution Statements E or F or REL TO.

### e. Export Controlled.

This category protects technical information in accordance with DoDD 5230.25, DoDI 2040.02, the ITAR, and EAR.

#### (1) Export-Controlled Technical Information.

Export-controlled technical information marked with Distribution Statement C or D will not be distributed outside the U.S. Government or to U.S. Government contractors without first verifying the recipient's eligibility and authority to receive export-controlled technical information by verifying that they have a current, valid Department of Defense Form 2345, "Militarily Critical Technical Data Agreement," available on the DoD Forms Management Program Website at https://www.esd.whs.mil/Portals/54/Documents/DD/forms/dd/dd2345.pdf, in accordance with DoDD 5230.25.

#### (2) Export-Control Warning.

All printed and electronic technical information, including technical information in a digital form, that is determined to contain export-controlled technical information, will be marked as shown in Figure 3. When it is technically impractical to use the entire statement, an abbreviated marking may be used and a copy of the full statement added to the notice to accompany the release of export-controlled technical information required by Part 250 of Title 32, CFR.

Appellate Case: 25-8006     Page: 29     Date Filed: 08/25/2025 Entry ID: 5556858

### Figure 3.  Export-Control Warning

WARNING - This document contains technical data whose export is restricted by the Arms Export Control Act (Section 2751 of Title 22, United States Code) or the Export Control Reform Act of 2018 (Chapter 58 Sections 4801-4852 of Title 50, United States Code).  Violations of these export laws are subject to severe criminal penalties.  Disseminate in accordance with provisions of DoD Directive 5230.25 and DoD Instruction 2040.02.

(3)  Export-Control Distribution Statements.

Authorized distribution statements for export control are Distribution Statements B, C, D, E, or F or REL TO.

### f.  Foreign Government Information.

This category protects information provided to the United States by a foreign government or governments, an international organization of governments, or any element thereof with the express written requirement from the foreign government that the information, the source of the information, or both are not to be further distributed without the permission of the foreign entity. It also protects information produced by the United States pursuant to, or as a result of, a joint arrangement with a foreign government or governments, an international organization of governments, or any element thereof, with the express written requirement from the U.S. Government that the information, the arrangement, or both are to not be further distributed without the permission of the U.S. Government.  Authorized distribution statements for foreign government information are Distribution Statements B, C, D, E, or F or REL TO.

### g.  International Agreements (IAs).

This category protects IAs and IA-related information that may contain sensitive information not authorized for public release.

(1)  This includes internal staffing documents, including, but not limited to, summary statements of intent, related technology security and foreign disclosure guidance, and IAs under negotiation.

(2)  Although IAs, once established, are normally publicly released on the Department of State treaty portal, an IA containing sensitive information of a foreign government or international organization may be exempt from public release, as annotated in Section 130c of Title 10, U.S.C.  Authorized distribution statements for such technical information are Distribution Statements B, C, D, E, or F or REL TO.

### h.  Operations Security.

This category protects technical information that that may be observed by adversary intelligence systems and to determine what indicators hostile intelligence systems may obtain that could be interpreted or assembled to derive critical information in time to be useful to

Appellate Case: 25-8006      Page: 30      Date Filed: 08/25/2025 Entry ID: 5556858

adversaries. Authorized distribution statements for operations security are Distribution Statements B, E, or F.

### i. Patents and Inventions.

This category protects information on any art or process—the way of doing or making things—that is or may be patentable under U.S. patent laws in which the U.S. Government owns or may own a right, title, or interest, including patents and patent applications under secrecy orders in accordance with Chapter 17 of Title 35, U.S.C. It also protects patentable information on systems or processes in the development or concept stage from premature distribution. This category does not apply to scientific or technical information protected by copyright or to patents issued by the U.S. Patent and Trademark Office, which are in the public domain. Authorized distribution statements for patents and inventions are Distribution Statements B, E, or F.

### j. Proprietary Business Information.

This category protects material and information relating to, or associated with, a company's products, business, or activities, including but not limited to financial information, data or statements, trade secrets, product research and development, existing and future product designs, and performance specifications. Authorized distribution statements for proprietary information are Distribution Statements B, E, or F.

### k. Small Business Innovation Research (SBIR).

The U.S. Government's rights to use, modify, reproduce, release, perform, display, or disclose this technical data are restricted by the DFARS and the terms of the applicable instrument. The cover will be marked with the SBIR data-rights marking in accordance with the applicable DFARS clause. Authorized distribution statements for SBIR technical information are Distribution Statements B, E, or F.

### l. Software Documentation.

This category protects technical information relating to computer software that is releasable only in accordance with the software license in a contract, negotiated in accordance with Subpart 227.72 of the DFARS. It includes documentation such as user or owner manuals, installation instructions, operating instructions, and other information that explains the capabilities of or provides instructions for using or maintaining computer software. The documentation is releasable only in accordance with terms of the licensing agreement. Authorized distribution statements for software documentation are Distribution Statements B, C, D, E, or F.

### m. Test and Evaluation.

This category protects results of testing and evaluation of commercial products or military hardware when disclosure may cause an unfair advantage or disadvantage to the product manufacturer. Authorized distribution statements for test and evaluation are Distribution Statements B, E, or F or REL TO.

### n. Vulnerability Information.

This category protects technical information that provides insight into vulnerabilities of U.S. critical infrastructure, including DoD warfighting capabilities vital to national security that are otherwise not publicly available. Authorized distribution statements for vulnerability information are Distribution Statements B, C, D, E, or F.

Appellate Case: 25-8006     Page: 32     Date Filed: 08/25/2025 Entry ID: 5556858

**Table 1.  Distribution Statements and Their Corresponding Categories for Use**

| | A | B | C | D | E |
|---|---|---|---|---|---|
| DISTRIBUTION STATEMENT A.  Approved for public release: distribution is unlimited. | | | | | |
| DISTRIBUTION STATEMENT B.  Distribution authorized to U.S. Government agencies [category] [date of determination].  Other requests for this document must be referred to [controlling DoD office]. | | | | | |
| DISTRIBUTION STATEMENT C.  Distribution authorized to U.S. Government agencies and their contractors [category] [date of determination].  Other requests for this document must be referred to [controlling DoD office]. | | | | | |
| DISTRIBUTION STATEMENT D.  Distribution authorized to Department of Defense and U.S. DoD contractors only [category] [date of determination].  Other requests for this document must be referred to [controlling DoD office]. | | | | | |
| DISTRIBUTION STATEMENT E.  Distribution authorized to DoD Components only [category] [date of determination].  Other requests for this document must be referred to [controlling DoD office]. | | | | | |
| DISTRIBUTION STATEMENT F.  Further distribution only as directed by [controlling DoD office] [date of determination] or higher DoD authority. | | | | | |
| REL TO.  Information has been predetermined by the DoD controlling agency, in accordance with established foreign disclosure policies, to be releasable through established foreign disclosure procedures and channels, to the foreign country and international organization indicated. | | | | | |
| **CATEGORY** | A | B | C | D | E |
| PUBLIC RELEASE | X | | | | |
| CTI | | X | X | X | X |
| CONTRACTOR PERFORMANCE EVALUATION | | X | | | X |
| CRITICAL TECHNOLOGY | | X | X | X | X |
| DIRECT MILITARY SUPPORT | | | | | X |
| EXPORT CONTROLLED | | X | X | X | X |
| FOREIGN GOVERNMENT INFORMATION | | X | X | X | X |
| IAs | | X | X | X | X |
| OPERATIONS SECURITY | | X | | | X |
| PATENTS AND INVENTIONS | | X | | | X |
| PROPRIETARY BUSINESS INFORMATION | | X | | | X |
| SBIR | | X | | | X |
| SOFTWARE DOCUMENTATION | | X | X | X | X |
| TEST AND EVALUATION | | X | | | X |
| VULNERABILITY INFORMATION | | X | X | X | X |

Appellate Case: 25-8006     Page: 38     Date Filed: 08/25/2025 Entry ID: 5556358

# SECTION 5: THIRD PARTY–IMPOSED MARKINGS

## 5.1. GENERAL.

Generally, contractors retain ownership of their intellectual property and the technical and other data they develop (that it is embodied in) that is delivered or otherwise provided to the U.S. Government.

    a.  The U.S. Government typically receives license rights to use, reproduce, modify, release, perform, display, and disclose the information.  The scope of the U.S. Government's license rights depends on a variety of factors, including the funding source for developing the technology, whether the information relates to a commercial item, and the parties' negotiations for specialized license terms or restrictions.

    b.  When the U.S. Government has unlimited rights, it may use, modify, reproduce, perform, display, release, or disclose information, in whole or in part, in any manner and for any purpose whatsoever and request or authorize others to do so.

## 5.2. RESTRICTIVE MARKINGS.

### a.  General.

    Data rights markings that restrict the Government's use and distribution of technical data and software are authorized on technical data and software developed exclusively or partially at private expense except for certain categories of data in which the U.S. Government always has unlimited rights and data developed exclusively at U.S. Government expense.  When the U.S. Government receives less than unlimited license rights in technical data, documents, or information, the contractor must mark the information with appropriate restrictive markings. The specific format and content of these markings depends on whether the data or software are commercial or noncommercial.

    (1)  For noncommercial technical data and noncommercial computer software, the applicable regulations specify the exact wording of the authorized restrictive markings.

    (2)  Commercial technical data and commercial computer software (except any commercial data that is not developed exclusively at private expense and certain categories of data in which the U.S. Government always has unlimited rights) may be marked with any restrictive marking that the owner of the data customarily provides the general public, provided it:

        (a)  Appropriately provides notice of the data owner's proprietary interests.

        (b)  Clearly characterizes the U.S. Government's license rights.

        (c)  Does not contravene Federal procurement law.

Appellate Case: 25-8006    Page: 34    Date Filed: 08/25/2025    Entry ID: 5556858

**b. Procurement Contracts.**

The Federal Acquisition Regulation and the DFARS govern the restrictive markings that apply to technical data, documents, or information that is developed or delivered under a procurement contract. Subpart 227.71 of the DFARS governs the license rights and restrictive markings for technical data, and Subpart 227.72 of the DFARS governs computer software and its documentation.

(1) Noncommercial Technologies.

The DFARS governs the restrictive markings that apply to technical data, documents, or information that are developed or delivered under DoD procurement contracts. DFARS Subpart 227.71 addresses the license rights and restrictive markings for technical data, and Subpart 227.72 of the DFARS addresses license rights in computer software and computer software documentation, which is considered a category of technical data. Restrictive markings that restrict the Government's use and distribution of technical data and software are authorized for noncommercial technical data and noncommercial computer software developed and delivered under U.S. Government procurement contracts with less than unlimited rights.

The DFARS establishes specific procedures governing the placement and location of restrictive markings on deliverables, storage media, and transmittal documents and markings to be used. There are only seven types of markings related to restrictions on the Government's use and distribution of technical data and software that are authorized for use on noncommercial technical data and noncommercial computer software by the relevant clauses:

(a) The Government Purpose Rights marking authorized by Clause 252.227-7013 of the DFARS.

(b) The Limited Rights marking, for technical data only, authorized by Clause 252.227-7013 of the DFARS.

(c) The Restricted Rights marking, for computer software only, authorized by Clause 252.227-7014 of the DFARS.

(d) The Special License Rights marking authorized by Clause 252.227-7013 of the DFARS.

(e) The Special License Rights marking authorized by Clause 252.227-7014 of the DFARS.

(f) The SBIR marking authorized by Clause 252.227-7018 of the DFARS.

(g) Pre-existing markings authorized under a prior U.S. Government contract.

Appellate Case: 25-8006   Page: 36   Date Filed: 08/25/2025 Entry ID: 5556858

(2) Commercial Technologies.

The DFARS guidance concerning restrictive markings on commercial technologies is flexible to account for the variations in markings customarily used in the marketplace provided to the public.

(a) The U.S. Government's license rights will be the standard Limited Rights specified in Clause 252.227-7015 of the DFARS for commercial technical data (except any commercial data not developed exclusively at private expense and certain categories of data in which the U.S. Government always has unlimited rights).

(b) Similarly, the DFARS does not specify a restrictive marking for commercial computer software. Commercial computer software delivered to the Government will be marked consistent with the license customary provided by the owner to the public, provided it is clear and doesn't contravene U.S. Government law. The U.S. Government may negotiate specifically negotiated license rights, which will be documented in the contract, if the commercial rights do not suffice. Any commercial computer software developed exclusively or partially at U.S. Government expense will be marked with the appropriate marking in Clause 252.227-7014 of the DFARS.

**c. Instruments Other Than Federal Acquisition Regulation-Based Contracts.**

Technical data, documents, or information may be developed or delivered to the U.S. Government under various legally binding instruments other than Federal Acquisition Regulation-based contracts. Examples include grants, cooperative agreements, cooperative research and development agreements pursuant to Section 3710a of Title 15, U.S.C., or other transaction agreements pursuant to Section 4201 of Title 10, U.S.C. The legally binding agreement should establish the U.S. Government's license rights and any specified marking.

**d. Other Forms of Proprietary Information.**

The U.S. Government may receive a private entity's proprietary information in a variety of contexts in which there may not be a formal legal agreement to document the U.S. Government's license rights or any specific restrictive markings. For example, a private entity may provide the U.S. Government with certain technical information to supplement the U.S. Government's evaluation of a new technology for market research or similar activities. In these cases, the restrictive marking on the materials may be the key element in identifying the U.S. Government's license rights in those materials. Use caution when evaluating these materials for applying of the appropriate distribution statement to ensure that the private entities' proprietary interests are protected.

**e. Copyright.**

Although not necessarily used as a restrictive marking, a notice of copyright may be used in addition to the other authorized markings. Conforming notices are limited to including the owner's legal name, copyright year, and either the term "copyright," the abbreviation "CopyR," or the copyright symbol, "©."

Appellate Case: 25-8006    Page: 36    Date Filed: 08/25/2025 Entry ID: 5556858

(1)  A conforming copyright notice alone does not qualify as a restrictive marking.

(2)  The contracting officer cannot accept third-party copyrighted material (i.e., copyrights in an entity's name that is not the prime contractor) without ensuring that the prime contractor obtained a license in that third-party copyrighted material consistent with the U.S. Government's license rights in the data.

(3)  Copyright protection is not available in the United States for works created by U.S. Government employees as part of their official duties except when a civilian member of the faculty of certain listed U.S. Government institutions owns the copyright to certain works in accordance with Section 105 of Title 17, U.S.C.

## 5.3.  REVIEWING THE APPLIED MARKINGS.

Technical data, documents, or information marked with contractor-imposed restrictive markings may be released only in accordance with U.S. Government license rights in those materials.

### a.  Step 1.

Verify the U.S. Government's license rights or authorization to distribute.  A third party–imposed restrictive marking provides general notice of restrictions on the use or disclosure of the information but may not completely or accurately specify the entire spectrum of license rights granted to the U.S. Government.  In most cases, the DFARS clauses in the contract (or language in other types of agreements like grants, other transactions, etc.) dictate the exact language for license rights markings with the exception of markings for commercial computer software.

### b.  Step 2.

Apply the markings.  The appropriate distribution statement is dependent in part on the scope of the U.S. Government's license rights in those materials.

(1)  In most cases, the reason "Proprietary Business Information" will provide a basis for Distribution Statements B, E, or F.  When used as the reason for a limitation, note the U.S. Government's license rights as described in Paragraph 5.2.a.(1) in parentheses (e.g., "Proprietary Information (DFARS Limited Rights)," "Proprietary Information (SBIR Rights)").

(2)  If the U.S. Government has unlimited rights in the information, the materials may qualify for Distribution Statement A if no other reason exists for using a more restrictive distribution statement or other restrictive markings (e.g., classification, export control) prevent public dissemination and after appropriate clearance procedures are carried out in accordance with DoDI 5230.29.  A copyright notice alone does not necessarily qualify as a restrictive marking.

### c.  Step 3.

Implement appropriate procedures and safeguards governing distribution.  In some cases, the U.S. Government may be authorized to distribute proprietary information only when the release

Appellate Case: 25-8006     Page: 37     Date Filed: 08/25/2025 Entry ID: 5556858

or disclosure accompanies certain procedural safeguards.  For example, the U.S. Government may release or disclose technical data or computer software governed by a DFARS Government Purpose Rights license only when the recipient of the information has signed a nondisclosure agreement as specified in DFARS 227.7103-7 or receives the information under performance of a contract in accordance with DFARS Clause 252.227-7025.  The U.S. Government must ensure that these requirements are satisfied before distribution.

# GLOSSARY

## G.1. ACRONYMS.

| ACRONYM | MEANING |
|---------|---------|
| CFR | Code of Federal Regulations |
| CTI | controlled technical information |
| CUI | controlled unclassified information |
| | |
| DCTO(S&T) | Deputy Chief Technology Officer for Science and Technology |
| DFARS | Defense Federal Acquisition Regulation Supplement |
| DoDD | DoD directive |
| DoDI | DoD instruction |
| DoDM | DoD manual |
| DOPSR | Defense Office of Prepublication and Security Review |
| DTIC | Defense Technical Information Center |
| | |
| EAR | Export Administration Regulations |
| | |
| IA | international agreement |
| ITAR | International Traffic in Arms Regulations |
| | |
| RDT&E | research, development, test, and evaluation |
| | |
| SBIR | small business innovation research |
| SF | standard form |
| | |
| U.S.C. | United States Code |

## G.2. DEFINITIONS.

Unless otherwise noted, these terms and their definitions are for the purpose of this issuance.

| TERM | DEFINITION |
|------|------------|
| **authorized holder** | Individual, agency, organization, or group of users permitted to designate or handle classified information or CUI. |
| **budget activity** | Defined in Chapter 1 of Volume 2A of DoD 7000.14-R. |
| **computer software** | Computer programs, source codes, source code listings, object code listings, design details, algorithms, processes, flow charts, formulas, and related material that would enable the software to be reproduced, |

Appellate Case: 25-8006    Page: 39    Date Filed: 08/25/2025 Entry ID: 5556358

recreated, or recompiled. Computer software does not include computer databases or computer software documentation.

**configuration management documentation**

Documentation that is prepared by a design activity for the disclosure and description of configuration items, form, fit, function, interface, performance, operation, reliability, maintainability, quality control, or other configuration management or engineering documentation features of items, materials, methods, practices, processes, and services.

**contracted fundamental research**

Research performed under grants and contracts that are funded by RDT&E Budget Activity 1 (Basic Research), whether performed by universities or industry, and Budget Activity 2 (Applied Research) performed on campus at a university. The research will not be considered fundamental in those rare and exceptional circumstances where the applied research–funded effort presents a likelihood of disclosing performance characteristics of military systems or manufacturing technologies that are unique and critical to defense and where the contract or grant records agreement on restrictions.

**contractor**

An individual or organization outside the U.S. Government that enters into any type of contractual vehicle (e.g., a contract, agreement, order, other transaction) to provide any supplies or services, including, but not limited to, research and development, to a U.S. Government agency, including prime contractors and subcontractors.

**controlling DoD office**

The DoD activity that sponsored the work that originated the technical information for the DoD and has the inherently governmental responsibility for determining the dissemination of such technical information. For joint sponsorship, the controlling DoD office is determined by agreement and may be a party, group, or committee representing the interested activities or DoD Components. The DoD activity that manages technical information not originated for the DoD but managed by that DoD activity has the inherently governmental responsibility for determining the dissemination of that technical information. Only the controlling DoD office or higher DoD authority may authorize dissemination beyond the dissemination statement.

**critical technology**

Defense articles or defense services included in the ITAR.

Items included in Supplement No. 1 to Part 774 of EAR and controlled:

Appellate Case: 25-8006    Page: 40    Date Filed: 08/25/2025 Entry ID: 5556858

Pursuant to multilateral regimes, including for reasons relating to national security, chemical and biological weapons proliferation, nuclear nonproliferation, or missile technology; or

For reasons relating to regional stability or surreptitious listening. Specially designed and prepared nuclear equipment, parts and components, materials, software, and technology covered by Part 810 of Title 10, CFR.

Nuclear facilities, equipment, and material covered by Part 110 of Title 10, CFR.

Select agents and toxins covered by Part 331 of Title 7, CFR; Part 121 of Title 9, CFR; or Part 73 of Title 42, CFR.

Emerging and foundational technologies controlled pursuant to Chapter 58 of Title 50, U.S.C.

Items listed on the DoD critical technologies list pursuant to Section 1049 of Public Law 115-232.

| | |
|---|---|
| **CTI** | Technical information with military or space applications that is subject to controls on access, use, reproduction, modification, performance, display, release, disclosure, or distribution. CTI does not include information concerning general scientific, mathematics, or engineering principles commonly taught in schools, colleges, and universities or information in the public domain. |
| **CUI** | Defined in Section 2002.4 of Title 32, CFR. |
| **CUI category** | Defined in Section 2002.4 of Title 32, CFR. |
| **date of determination** | The date on which the reason for assigning a specific distribution statement was determined. It is usually the date of the report but may be earlier if a contract or other agreement specifies it. The date is important for document identification and for legal, contractual, and regulatory evidentiary purposes. |
| **Defense Acquisition System** | Defined in DoDD 5135.02. |
| **defense article** | Defined in Part 120.6 of the ITAR. |
| **defense service** | Defined in Part 120.9 of the ITAR. |
| **distribution statement** | A statement used to mark technical information to indicate the extent of its availability for secondary distribution, release, and disclosure |

Appellate Case: 25-8006    Page: 36    Date Filed: 08/25/2025 Entry ID: 5556858

without additional approvals or authorizations. A distribution statement marking is distinct from and in addition to a security classification marking assigned in accordance with Volume 2 of DoDM 5200.01.

**document**  Defined in Section 2002.4 of Title 32, CFR.

**engineering information**  Engineering data used for design, development, test, manufacture, acceptance, training, operation, maintenance, and overhaul. The principal types of engineering information are engineering drawings and associated lists (e.g., parts list, data list, index list), manufacturer specifications and standards, data sheets, test reports, bills of material, handbooks, technical orders or manuals, engineering changes, technical data packages, and other documents that provide data on reliability, maintainability, end-item application, and quality control.

**export control**  Defense articles, defense services, and related technical data subject to the ITAR or commodities, software, or technology subject to the EAR.

**export-controlled technical information**  Technical information concerning certain items, commodities, technology, software, or other information whose export could reasonably be expected to adversely affect U.S. national security and nonproliferation objectives, including technical data defined in Section 120.10 of Title 22, CFR, and technology defined in Part 772.1 of Title 15, CFR, and Section 4801(11) of Title 50, U.S.C.

**extramural research**  Research conducted by any research institution other than the Federal agency to which the funds supporting the research were appropriated.

**foreign government information**  Information provided to the U.S. Government by a foreign government or governments, an international organization of governments, or any element thereof with the expectation that the information, the source of the information, or both are to be held in confidence and afforded the same degree of protection afforded to U.S. Government information of an equivalent classification and distribution control as required by national security regulations; or

Information produced by the U.S. Government pursuant to or as a result of a joint arrangement with a foreign government or governments, an international organization of governments, or any element thereof requiring that the information, the arrangement, or both are to be held in confidence and afforded the same degree of protection afforded to U.S. Government information of an equivalent

Appellate Case: 25-8006    Page: 42    Date Filed: 08/25/2025 Entry ID: 5556858

classification and distribution control as required by national security regulations.

| | |
|---|---|
| **fundamental research** | Defined in National Security Decision Directive-189. |
| **legacy material** | Defined in Section 2002.4 of Title 32, CFR. |
| **primary distribution** | The initial targeted distribution of or access to technical documents authorized by the controlling DoD office or any release by the controlling DoD office thereafter. |
| **proprietary** | Information relating to or associated with a company's products, business, or activities, including, but not limited to, financial information, data or statements, trade secrets, product research and development, existing and future product designs and performance specifications, marketing plans or techniques, schematics, client lists, computer programs, processes, and knowledge that have been clearly identified and properly marked by the company as proprietary information, trade secrets, or company confidential information. |
| **RDT&E** | Defined in Chapter 1 of Volume 2A of DoD 7000.14-R. |
| **repository** | Data centers, information analysis centers, technical libraries, and other information activities that collect, store, process, and provide document, data, or information services. |
| **secondary distribution** | Release of technical information by an entity other than the originator or controlling DoD office. This includes loaning, allowing the reading of, or releasing a document outright in whole or in part. |
| **technical data** | Defined in Clause 252.227-7013(a)(15) of the DFARS. |
| **technical document** | Any recorded information that conveys scientific and technical information or technical data. This includes informal documents like working papers, memorandums, and preliminary reports when such documents have use beyond the immediate mission requirement or will become part of the historical record of technical achievements. |
| **technical information** | Technical data or computer software of any kind that can be used or adapted for use in the design, production, manufacture, assembly, repair, overhaul processing, engineering, development, operation, maintenance, adapting, testing, or reconstruction of goods or materiel or any technology that advances the state of the art, or establishes a new art, in an area of significant military applicability in the United States. The data may be in tangible form, such as a blueprint, |

Appellate Case: 25-8006      Page: 38      Date Filed: 08/25/2025 Entry ID: 5556858

photograph, plan, instruction, or an operating manual or may be intangible, such as a technical service or oral, auditory, or visual descriptions. Examples of technical data include research and engineering data, engineering drawings, and associated lists; specifications; standards; process sheets; manuals; technical reports; technical orders; catalog-item identifications; data sets; studies, analyses, and related information; and computer software.

**unclassified**   Defined in DoDI 5200.48.

Appellate Case: 25-8006    Page: 44    Date Filed: 08/25/2025 Entry ID: 5556358

# REFERENCES

Code of Federal Regulations, Title 10

Code of Federal Regulations, Title 15

Code of Federal Regulations, Title 22

Code of Federal Regulations, Title 32

Code of Federal Regulations, Title 36, Chapter XII, Subchapter B

Code of Federal Regulations, Title 42, Part 73

Code of Federal Regulations, Title 7, Part 331

Code of Federal Regulations, Title 9, Part 121

Defense Federal Acquisition Regulation Supplement, current edition

DoD 7000.14-R, Volume 2A, Chapter 1, "Department of Defense Financial Management Regulations: Budget Formulation and Presentation," current edition

DoD Directive 5122.05, "Assistant to the Secretary of Defense for Public Affairs (ASD(PA))," August 7, 2017

DoD Directive 5135.02, "Under Secretary of Defense for Acquisition and Sustainment (USD(A&S))," July 15, 2020

DoD Directive 5137.02, "Under Secretary of Defense for Research and Engineering (USD(R&E))," July 15, 2020

DoD Directive 5205.02E, "DoD Operations Security (OPSEC) Program," June 20, 2012, as amended

DoD Directive 5230.11, "Disclosure of Classified Military Information to Foreign Governments and International Organizations," June 16, 1992

DoD Directive 5230.25, "Withholding of Unclassified Technical Data from Public Disclosure," November 6, 1984, as amended

DoD Directive 5400.07, "DoD Freedom of Information Act (FOIA) Program," April 5, 2019

DoD Instruction 2040.02, "International Transfers of Technology, Articles, and Services," March 27, 2014, as amended

DoD Instruction 3200.12, "DoD Scientific and Technical Information Program (STIP)," August 22, 2013, as amended

DoD Instruction 5000.79, "Defense-wide Sharing and Use of Supplier and Product Performance Information (PI)," October 15, 2019

DoD Instruction 5000.83, "Technology and Program Protection to Maintain Technological Advantage," July 20, 2020, as amended

DoD Instruction 5000.90, "Cybersecurity for Acquisition Decision Authorities and Program Managers," December 31, 2020

DoD Instruction 5200.01, "DoD Information Security Program and Protection of Sensitive Compartmented Information (SCI)," April 21, 2016, as amended

DoD Instruction 5200.48, "Controlled Unclassified Information (CUI)," March 6, 2020

DoD Instruction 5230.09, "Clearance of DoD Information for Public Release," January 25, 2019, as amended

Appellate Case: 25-8006     Page: 46     Date Filed: 08/25/2025 Entry ID: 5556858

DoD Instruction 5230.29, "Security and Policy Review of DoD Information for Public Release," August 13, 2014, as amended

DoD Manual 3200.14, Volume 1, "Principles and Operational Parameters of the DoD Scientific and Technical Information Program (STIP): General Processes," March 14, 2014, as amended

DoD Manual 5200.01, "DoD Information Security Program," February 24, 2012, as amended

DoD Manual 5200.45, "Instructions for Developing Security Classification Guides," April 2, 2013, as amended

DoD Manual 5230.30, "DoD Mandatory Declassification Review (MDR) Program," December 22, 2011, as amended

DoD Manual 5400.07, "DoD Freedom of Information Act (FOIA) Program," January 25, 2017

Executive Order 13526, "Classified National Security Information," December 29, 2009

National Security Decision Directive-189, "National Policy on the Transfer of Scientific, Technical, and Engineering Information," September 21, 1985

Public Law 115-232, Section 1049, "John S. McCain National Defense Authorization Act for Fiscal Year 2019," August 13, 2018

United States Code, Title 5, Section 552, (also known as the Freedom of Information Act)

United States Code, Title 10

United States Code, Title 15

United States Code, Title 17, Section 105

United States Code, Title 22

United States Code, Title 35, Chapter 17

United States Code, Title 44

United States Code, Title 50

# EXHIBIT B

**From:** Vass, Thomas CIV USARMY PEO SOLDIER (USA) <thomas.vass.civ@army.mil>
**Sent:** Monday, July 21, 2025 10:33 AM
**To:** Eric Finkelman <Eric.Finkelman@sigsauer.com>; James Lano <James.Lano@sigsauer.com>
**Cc:** Katelyn Wilson <Katelyn.Wilson@sigsauer.com>; Keith Gibson <keith.gibson@littletonjoyce.com>; Gulliver, Colleen Carey <colleen.gulliver@us.dlapiper.com>; Kelso, Bryan V LTC USARMY PEO SOLDIER (USA) <bryan.v.kelso.mil@army.mil>; Bielamowicz, Cheryl M CIV USARMY PEO SOLDIER (USA) <cheryl.m.bielamowicz.civ@army.mil>; Fiorellini, Arthur J CIV USARMY PEO SOLDIER (USA) <arthur.j.fiorellini.civ@army.mil>; Siegle, David K CIV USARMY DEVCOM AC (USA) <david.k.siegle.civ@army.mil>; Nix, Casey P CIV USARMY DEVCOM AC (USA) <casey.p.nix.civ@army.mil>; Moraga, Sergio F CIV USARMY ACC (USA) <sergio.f.moraga.civ@army.mil>; Sloan, Megan E CIV USARMY ACC (USA) <megan.e.sloan2.civ@army.mil>; Larson, Sara M CIV USARMY DEVCOM AC (USA) <sara.m.larson6.civ@army.mil>; Pintsch, M V (Matt) CIV USARMY DEVCOM AC (USA) <matas.v.pintsch.civ@army.mil>; Asay, Wesley C CIV USARMY DEVCOM AC (USA) <wesley.c.asay.civ@army.mil>; Cline, Andrew H CIV USARMY PEO SOLDIER (USA) <andrew.h.cline.civ@army.mil>
**Subject:** RE: W15QKN-17-D-0016, Modular Handgun System, Request to Release Approved Engineering Change Proposals (ECP's)

[External Message]

Good Morning Eric,

==The Army position would be to oppose the distribution to the public of the FMECA document as it potentially reveals critical information about the handgun (design, reliability, performance, etc.).==

Hope this helps and let me know if you have any additional questions.

Thanks,
Thomas Vass
APM - PM Soldier Weapons
Picatinny, NJ 07806-5000
Comm: (520) 725-9585
Cell: (862) 251-0805

---

**From:** Eric Finkelman <Eric.Finkelman@sigsauer.com>
**Sent:** Friday, July 18, 2025 8:31 AM
**To:** Vass, Thomas CIV USARMY PEO SOLDIER (USA) <thomas.vass.civ@army.mil>; James Lano <James.Lano@sigsauer.com>
**Cc:** Katelyn Wilson <Katelyn.Wilson@sigsauer.com>; Keith Gibson <keith.gibson@littletonjoyce.com>; Gulliver, Colleen Carey <colleen.gulliver@us.dlapiper.com>; Kelso, Bryan V LTC USARMY PEO SOLDIER (USA) <bryan.v.kelso.mil@army.mil>; Bielamowicz, Cheryl M CIV USARMY PEO SOLDIER (USA)

1

<cheryl.m.bielamowicz.civ@army.mil>
**Subject:** Re: W15QKN-17-D-0016, Modular Handgun System, Request to Release
Approved Engineering Change Proposals (ECP's)

SIG SAUER - Confidential

Good morning, Thomas. Monday, July 21 would be great. Thank you, and
have a great weekend!
Best regards,
Eric

SIG SAUER - CONFIDENTIAL - This document may only be shared with SIG SAUER Employees and
approved business partners subject to an NDA or other confidentiality agreement

---

**From:** Vass, Thomas CIV USARMY PEO SOLDIER (USA)
<thomas.vass.civ@army.mil>
**Sent:** Friday, July 18, 2025 7:38 AM
**To:** Eric Finkelman <Eric.Finkelman@sigsauer.com>; James Lano
<James.Lano@sigsauer.com>
**Cc:** Katelyn Wilson <Katelyn.Wilson@sigsauer.com>; Keith Gibson
<keith.gibson@littletonjoyce.com>; Gulliver, Colleen Carey
<colleen.gulliver@us.dlapiper.com>; Kelso, Bryan V LTC USARMY PEO SOLDIER
(USA) <bryan.v.kelso.mil@army.mil>; Bielamowicz, Cheryl M CIV USARMY PEO
SOLDIER (USA) <cheryl.m.bielamowicz.civ@army.mil>
**Subject:** RE: W15QKN-17-D-0016, Modular Handgun System, Request to Release
Approved Engineering Change Proposals (ECP's)

[External Message]

Good Morning Mr. Finkelman,

I've emailed our legal office this morning on your inquiry below.  The
gentlemen who I emailed are out of the office today.  Please let me know if
our answer to your email can be provided to you on Monday, 21 July.

Thanks,
Thomas Vass
APM - PM Soldier Weapons
Picatinny, NJ 07806-5000
Comm: (520) 725-9585
Cell: (862) 251-0805

---

**From:** Eric Finkelman <Eric.Finkelman@sigsauer.com>
**Sent:** Thursday, July 17, 2025 4:32 PM
**To:** Vass, Thomas CIV USARMY PEO SOLDIER (USA) <thomas.vass.civ@army.mil>; James
Lano <James.Lano@sigsauer.com>
**Cc:** Katelyn Wilson <Katelyn.Wilson@sigsauer.com>; Keith Gibson
<keith.gibson@littletonjoyce.com>; Gulliver, Colleen Carey

**Subject:** RE: W15QKN-17-D-0016, Modular Handgun System, Request to Release
Approved Engineering Change Proposals (ECP's)

SIG SAUER - Confidential

Hello Thomas,
A similar question has just arisen in another matter, where a member of the press is
seeking to intervene in an action against Sig Sauer in Missouri federal court, seeking
access to document under seal. One of these documents is the FMECA submitted
by Sig Sauer, which is covered by Distribution Statement D. Would the Army's
position be the same here, and would it be opposed to the public release of this
document. Sig Sauer intends to oppose the release of any sensitive documents that
are currently under seal, and knowing the Army's position with respect to the
release of this document would be helpful.
Thanks, and best regards,
Eric

# Eric R. Finkelman
*Assistant General Counsel--Litigation*
D: +1 (603) 570-1758
M: +1 (914) 316-8578
[Eric.Finkelman@sigsauer.com](mailto:Eric.Finkelman@sigsauer.com)
<image001.jpg>
ATTORNEY CLIENT PRIVILEGE/ATTORNEY WORK PRODUCT


SIG SAUER - CONFIDENTIAL - This document may only be shared with SIG SAUER Employees and
approved business partners subject to an NDA or other confidentiality agreement

# Eighth Circuit Court of Appeals

**PRO SE Notice of Docket Activity**

The following was filed on 08/11/2025

**Case Name:**   Joshua Glasscock v. Sig Sauer, Inc.
**Case Number:** 25-8006

**Docket Text:**
DOCUMENT FILED - Declaration of Eric R. Finkleman in Support of Petitioner Sig Sauer, Inc.'s Motion to Seal filed by Sig Sauer, Inc.. w/service 08/12/2025. [5546854] [25-8006]

**The following document(s) are associated with this transaction:**
Document Description:  Eric R. Finkelman Declaration in Supp of Motion to Seal

**Notice will be mailed to:**

**Notice will be electronically mailed to:**

Matthew L. Dameron: matt@williamsdirks.com,
bstrickland@williamsdirks.com,cflores@williamsdirks.com
B. Keith Gibson: keith.gibson@littletonjoyce.com
Colleen Michelle Gulliver: colleen.gulliver@us.dlapiper.com
Robert L. Joyce: robert.joyce@littletonjoyce.com
Clinton J. Mann: cmann@williamsdirks.com
Cara Richelle Rose: crose@fsmlawfirm.com
Todd C. Werts: werts@learwerts.com,
lear@learwerts.com,sowers@learwerts.com,sofia@learwerts.com
Michael Anthony Williams: mwilliams@williamsdirks.com,
bstrickland@williamsdirks.com,cflores@williamsdirks.com